Filed 7/29/25  P. v. Bibi CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SARAH BIBI,<br><br>    Defendant and Appellant. | B336245<br><br>(Los Angeles County<br>Super. Ct. No. BA488149) |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed.

Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Sarah Bibi of one count of first degree burglary and acquitted her of forcible lewd act on a child under age 14.[1]  The punishment for first degree burglary is a term of imprisonment of two, four, or six years.  Bibi and her trial counsel waived Bibi's right to a jury trial on the three aggravating factors that the prosecution alleged justified imposition of the upper term six-year sentence.  At a court trial, the trial court found all three aggravating factors true beyond a reasonable doubt, selected the six-year upper term prison sentence, and doubled the prison sentence to 12 years pursuant to the "Three Strikes" law.[2]

On appeal, Bibi argues the trial court's selection of the upper term sentence violated section 1170, subdivision (b).  In particular, she claims (1) the court did not determine expressly whether a departure from section 1170, subdivision (b)(1)'s middle term presumption was justified; (2) subdivision (b)(2) did not permit the trial court to be the factfinder on the aggravating circumstances because the court was not the factfinder as to the charged substantive offenses; and (3) the court failed to apply subdivision (b)(6)'s presumption that the lower term must be imposed if the defendant experienced certain

---

[1]  The parties agree that Bibi is a transgender woman and both parties use the pronouns she/her to refer to Bibi in their briefing.  For those reasons, we refer to Bibi using female pronouns.

[2]  (See *People v. Carmony* (2004) 33 Cal.4th 367, 370–371 [noting that the Three Strikes law is codified in Pen. Code, § 667, subds. (b)–(i) & § 1170.12].)  Undesignated statutory citations are to the Penal Code.

trauma that was a contributing factor in the commission of the burglary.

We reject Bibi's claims of error. First, Bibi does not demonstrate the court had to use certain language to explain its decision to impose the upper term. Second, the plain language of section 1170, subdivision (b)(2) belies Bibi's assertion the court was barred from trying the aggravating factors because the court was not the factfinder as to the underlying offenses. Lastly, because Bibi does not claim to have made an initial showing to the trial court that the sexual violence she allegedly experienced was a contributing factor in the commission of the burglary, subdivision (b)(6) did not require the court to impose the lower term. We thus affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

We summarize only those facts pertinent to our disposition of this appeal.

---

[3] We derive our description of the trial court proceedings and of the evidence presented below in part from admissions made by the parties in their appellate briefing. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 674 [" 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

### 1.    *The first amended information*

The People filed a first amended information charging Bibi with one count of forcible lewd act on a child under age 14, in violation of section 288, subdivision (b)(1) (count 1); and one count of first degree burglary with person present, in violation of section 459 (count 2).  The People alleged the following three aggravating factors:  (1) the offenses involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, and callousness, within the meaning of California Rules of Court, rule 4.421(a)(1);[4] (2) the victim was "particularly vulnerable" for the purpose of rule 4.421(a)(3); and (3) Bibi served a prior term in prison or jail within the meaning of rule 4.421(b)(3).  The People further averred Bibi suffered a prior serious felony conviction for the purpose of section 667, subdivision (a)(1) and a prior serious or violent felony conviction for the purpose of the Three Strikes law.

### 2.    *The People's trial evidence*

On a morning in June 2020, M.M., a 13-year-old girl, was alone at an apartment she shared with her mother, M.U.  M.M. heard someone knock on the door to the apartment.  After M.M. opened the door partway, Bibi entered the apartment.  In her opening brief, Bibi acknowledges that at trial, the prosecution presented a surveillance video depicting Bibi "stopping at [M.U.'s] apartment[ ] and then entering [it]."[5]

---

[4] All further rule references are to the California Rules of Court.

[5] The video is not in the record before us.

Bibi pushed M.M. onto a sofa located approximately 20 feet from the door. As M.M. kicked and screamed, Bibi removed M.M.'s pajama pants and rubbed M.M.'s inner thigh. While M.M. was on the sofa, she realized Bibi was "naked from the waist down" and M.M. saw Bibi's nonerect penis. M.M. did not recall seeing Bibi remove her own pants.

Bibi ultimately backed off M.M. and walked into M.U.'s room. M.M. put on her pants, went to the kitchen, and telephoned emergency services. The trial court admitted into evidence an exhibit that M.M. identified as a recording of her call to emergency services.[6] At some point, Bibi entered the kitchen and grabbed M.M.'s house keys off the counter. M.M. grabbed the keys back from Bibi.

Law enforcement officers later arrived and arrested Bibi. M.M. was taken to a hospital for a forensic examination. Investigators discovered Bibi's DNA on a swab taken from M.M.'s right breast. Several days after the incident, M.U. found a pair of men's underwear in the apartment that did not belong to M.M. or M.U.

3.    *Bibi's trial evidence*

Bibi took the stand in her own defense. Bibi was born a male in Uganda. When Bibi was 17, bystanders discovered that Bibi was gay upon observing her leave a club with a male romantic partner. Bibi had to leave Uganda shortly after these bystanders discovered her homosexuality. Bibi came to the United States in 2013. Because Bibi has undergone hormone therapy, her penis cannot become erect.

---

[6] The recording is not in the record before us.

5

Bibi claimed to have no memory of the offenses alleged by the prosecution. Bibi asserted she took several narcotics prior to the incident.

Bibi has never been attracted to young people. Bibi has never had a sexual encounter with a woman. A clinical psychologist who specializes in nonbinary transgender adults testified at trial that the probability that Bibi would engage in sexual activity with a female was zero.

### 4. *The jury's verdicts on counts 1 and 2*

A jury acquitted Bibi of forcible lewd act upon a child under age 14 as charged in count 1 and found her not guilty of the lesser offenses of lewd act upon a child under age 14 and attempted forcible lewd act upon a child under age 14. The jury found Bibi guilty of first degree burglary as charged in count 2.

### 5. *The court trial on the aggravating factors and Bibi's prior conviction, the sentencing hearing, and Bibi's notice of appeal*

As we explain in greater detail in our Discussion, part B.1, *post*, as the jury was deliberating on counts 1 and 2, Bibi waived her right to a jury trial on the aggravating factors alleged in the first amended information. On October 20, 2023, the trial court held a court trial on the aggravating factors and on whether Bibi had suffered a prior conviction for the purposes of section 667, subdivision (a)(1) and the Three Strikes law, and sentenced Bibi. The court found the People had proven beyond a reasonable doubt Bibi had been convicted and sentenced for attempted first degree burglary, meaning that Bibi suffered a prior strike under the Three Strikes law and a prior serious felony conviction for the purposes of the five-year enhancement provided in section 667,

6

subdivision (a)(1). (See § 667, subd. (a)(1) ["A person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately."].)

The trial court found "all three factors in aggravation [alleged by the People] true beyond a reasonable doubt."

In connection with the aggravating factor provided in rule 4.421(a)(1), the court remarked, "[As to this rule,] which includes threats of great bodily harm, high degree of cruelty, and viciousness and callousness, the court finds beyond a reasonable doubt based upon the testimony adduced at trial as well as the exhibits and the video that the—entering, the way in which the defendant entered and then what transpired with the thirteen year old inside, although it did not amount to a conviction, the— the physical nature of what I will call an attack in this court's mind was proven beyond a reasonable doubt, and I would find that factor to be true."

Regarding the aggravating factor alleged under rule 4.421(a)(3), the court stated, "The victim was particularly vulnerable. This young lady was thirteen years of age at the time, expecting either a neighbor or service personnel to come back—when I say service, I mean to service equipment—or her mother returning from work. What happened instead was that the defendant showed up, forced her way in. [¶] The 911 call spoke volumes as to how terrified that young woman was. It was a very high pitched, a very rapid pace and barely comprehensible, but it left the impression in this court's mind certainly beyond all

doubt that this young lady was terrified out of her mind and was scared to death."

The trial court found the People proved beyond a reasonable doubt the third aggravating factor that Bibi had served a prior prison term for the purposes of rule 4.421(b)(3).

Turning to sentencing, the trial court explained that for Bibi's conviction for "first degree burglary with person present, . . . . [the l]ow term is 2 years, mid term is 4[, and t]he high term or the aggravated term is 6 years." In selecting the upper term, the court stated, "The court, based upon the threat of—[rule] 4.421(a)(1)—the threat of great bodily harm and also [rule] 4.421(a)(3) find[s] that those aggravate the sentence. And so instead of the what I call the presumptive mid term, the court would impose the high term in state prison. And that would be 6 years."

The court struck the section 667, subdivision (a)(1) five-year enhancement in the interest of justice. The court doubled the six-year prison term for the burglary conviction pursuant to the Three Strikes law, thereby imposing an aggregate 12-year prison term.

On December 19, 2023, Bibi timely appealed from the judgment.

## APPLICABLE LAW AND STANDARDS OF REVIEW

### A. Applicable Law

As relevant here, section 461 states: "Burglary is punishable as follows: [¶] . . . Burglary in the first degree: by imprisonment in the state prison for two, four, or six years." (§ 461.)

8

Section 1170, subdivision (b)(1) provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1).)

In turn, section 1170, subdivision (b)(2) states: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense." (§ 1170, subd. (b)(2).)

"Notwithstanding paragraphs (1) and (2) [of subdivision (b) of section 1170], the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

In addition, section 1170, subdivision (b)(6) requires the trial court to impose the lower term sentence in certain cases. (See *People v. Knowles* (2024) 105 Cal.App.5th 757, 765 (*Knowles*).) Subdivision (b)(6) provides: "[U]nless the court finds

9

that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:  [¶]  (A)  The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.  [¶]  (B) The person is a youth or was a youth . . . at the time of the commission of the offense.  [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking."  (See § 1170, subd. (b)(6); see also *Knowles*, at p. 765 [noting the word "such" should be bracketed into the statute as shown above]; *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 986–987 (*Fredrickson*) [same].)

## B.    Standards of Review

"We review discretionary sentencing decisions for abuse of discretion.  [Citation.]  A court abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its discretion so that it does not exercise informed discretion at all.  [Citation.]  Exercises of sentencing discretion must be 'consistent with the letter and spirit of the law.'  [Citation.]  ' "[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." '  [Citation.]"  (*Knowles*, *supra*, 105 Cal.App.5th at pp. 764–765.)

Under the abuse of discretion standard, "a trial court's . . . conclusions of law are reviewed de novo."  (See *In re White* (2020) 9 Cal.5th 455, 470.)  An issue of statutory

10

construction is a question of law. (See *Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 305.)

Regardless of the applicable standard of review, "the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (See *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; see also *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555 [" 'Even when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. . . ." ' [Citation.]" . . . " 'It is the appellant who bears the burden of overcoming th[e] presumption [that an appealed judgment or order is correct].' "].) To overcome the presumption of correctness, an appellant must supply the reviewing court with cogent argument supported by legal analysis and citation to the record. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "]; *People v. Flint* (2018) 22 Cal.App.5th 983, 1006, fn. 17 (*Flint*) [noting that an appellate court may " 'decline to consider any factual assertion unsupported by record citation at the point where it is asserted[,]' " and that " '[a]n appellate court "will not develop the appellants' arguments for them" ' "].)

11

## DISCUSSION

### A. Bibi Does Not Show the Trial Court Erred By Failing To Explain Adequately Its Findings on the Aggravating Sentencing Factors

Regarding the trial court's obligation to articulate its reasoning for selecting the lower, middle, or upper term sentence, section 1170, subdivision (b)(5) requires the court to "set forth on the record the facts and reasons for choosing the sentence imposed." (§ 1170, subd. (b)(5).) Similarly, rule 4.420(i) provides, "The reasons for selecting one of the three authorized terms of imprisonment referred to in section 1170[ subdivision, ](b) must be stated orally on the record" (rule 4.420(i)), and section 1170, subdivision (c) requires "[t]he court [to] state the reasons for its sentence choice on the record at the time of sentencing" (§ 1170, subd. (c)).

As we noted in our Factual and Procedural Background, part 5, *ante*, the trial court found "the threat of great bodily harm" for purposes of rule 4.421(a)(1) and the particular vulnerability of the victim under rule 4.421(a)(3) "aggravate the sentence." Immediately thereafter, the court stated, "And so instead of the . . . presumptive mid term, the court would impose the high term in state prison." (See Factual & Procedural Background, part 5, *ante*.)

Bibi contends the trial court erred by failing to "separately determine whether or not a departure from the middle term and imposition of the upper term is *justified* in this case." (Italics added.) Bibi does not argue, let alone direct us to any authority demonstrating, that the trial court had to employ any particular verbiage to explain why it imposed the upper term. The court's above remarks make clear that it found the noted aggravating

12

circumstances justified imposition of the high term.  We thus reject this claim of error.  (See *People v. Evans* (2011) 200 Cal.App.4th 735, 756, fn. 12 [noting that a reviewing court may reject an argument for which a party fails to offer adequate support].)[7]

**B.**  **Section 1170, Subdivision (b)(2) Does Not Prohibit a Trial Court From Being the Factfinder on Aggravating Factors Where the Court Was Not the Factfinder on the Substantive Offenses**

Bibi argues in her opening brief that the trial court violated section 1170, subdivision (b)(2) by acting as the trier of fact as to the three aggravating factors alleged by the prosecution. Arguably, Bibi failed to preserve this objection for appeal. (Discussion, part B.1, *post*.)  We nonetheless exercise our discretion to reach the merits of this argument.  (*Ibid.*)  We conclude the statute did not bar the court from trying the aggravating factors even though it did not act as the factfinder vis-à-vis the substantive offenses.  (Discussion, part B.2, *post*).

---

[7] Although the trial court did not explain why it omitted the third aggravating factor alleged by the People (i.e., the prior prison term under rule 4.421(b)(3)) from its list of aggravating factors warranting imposition of the upper term, the court may have declined to rely upon that factor because it had concluded Bibi's prior attempted burglary conviction triggered enhancement of her sentence under the Three Strikes law.  (See § 1170, subd. (b)(5) ["The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."].)  In any event, Bibi does not contend the court erred in failing to clarify why it did not rely upon this aggravating factor in selecting the upper term.

We, however, conclude Bibi forfeited other arguments by raising them for the first time in her reply brief, including her contention that her jury trial waiver did not authorize the court to try the facts *underlying* the aggravating factors. (Discussion, part B.3, *post*.)

### 1. Although Bibi arguably forfeited her contention that section 1170, subdivision (b)(2) barred the trial court from trying the aggravating factors, we exercise our discretion to address that issue

While the jury was deliberating, the trial court and the prosecutor asked Bibi and her trial counsel whether they waived Bibi's right to a jury trial on the three alleged aggravating circumstances and the prior conviction allegations. Bibi and her counsel explicitly waived her right to a jury trial on those issues. At the subsequent court trial, the court found the three aggravating factors true and concluded Bibi suffered a prior conviction for attempted first degree burglary. (Factual & Procedural Background, part 5, *ante*.) On appeal, the parties agree Bibi's trial counsel did not challenge the court's authority to conduct the court trial on the aggravating factors.

The Attorney General asserts Bibi forfeited her contention section 1170, subdivision (b)(2) barred the trial court from trying the aggravating factors. (See also *People v. Leonard* (2014) 228 Cal.App.4th 465, 481–482 [" ' " 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " ' "].) Bibi counters, inter alia, that "review is warranted . . . to forestall future litigation of a claim of ineffective assistance of counsel

14

for . . . failing to object to judicial factfinding at sentencing." Given Bibi's potential claim of ineffective assistance of trial counsel and the fact the Attorney General had the opportunity to brief this issue of statutory interpretation, we elect to address her claim without deciding whether she failed to preserve it for appellate review. (See *People v. Walts* (2025) 112 Cal.App.5th 127, 140 [holding that a reviewing court may address a forfeited claim to "forestall a subsequent proceeding involving claims of ineffective assistance of counsel"].)

### 2. *Bibi's interpretation of section 1170, subdivision (b)(2) is inconsistent with the statute's plain language and is not compelled by the doctrine of constitutional avoidance*

To recap, section 1170, subdivision (b)(2) provides in part: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

Bibi argues this statutory text is "subject to two distinct interpretations": (1) "[T]he Legislature could have meant to retain the trial court's authority to decide aggravating factors separately from a jury's finding of guilt"; or (2) "the Legislature could have meant to allow the trial court to determine the truth of aggravating factors only when the defendant's guilt has been determined at a court trial." Bibi asks us to adopt the latter construction because the former is not "protective of the prerogative of the jury to decide the facts and of a defendant's

15

right to a jury determination of the facts . . . ."  Specifically, she argues that if a trial court were permitted to act as the factfinder vis-à-vis the aggravating factors in a bench trial held after a jury has determined the defendant's guilt, then the court may render a finding that is inconsistent with the jury's verdict.

"In interpreting a statute, '[t]he fundamental rule is to ascertain the Legislature's intent in order to give effect to the purpose of the law.'  [Citation.]  'We first examine the words of the statute and try to give effect to the usual, ordinary import of the language while not rendering any language surplusage. . . .'  [Citation.]"  (*Dignity Health v. Local Initiative Health Care Authority of Los Angeles County* (2020) 44 Cal.App.5th 144, 154 (*Dignity Health*).)

Regarding the statutory text, Bibi appears to argue the term "court trial" in section 1170, subdivision (b)(2) can be read to refer exclusively to a proceeding in which the trial court serves as a factfinder on all issues, that is, both as to the charged offenses and the aggravating sentencing factors.  In effect, Bibi asks us to insert the following bracketed and italicized text into subsection (b)(2) of section 1170:  "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been . . . found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial *[in which the trial judge had also served as the factfinder on the underlying charges]*."  (§ 1170, subd. (b)(2), italicized text added.)  Bibi does not explain why this court—as opposed to the Legislature—has authority to rewrite the statute in the way she proposes.  (See *Lewis v. Clarke* (2003)

108 Cal.App.4th 563, 567 ["We cannot insert what has been omitted [from a statute], omit what has been inserted, or rewrite the statute to conform to a presumed intention that is not expressed."].)

In addition, Bibi's construction of "court trial" is undercut by the well-established proposition that a trial court may, with the consent of the defendant, bifurcate proceedings such that the jury tries the defendant's guilt and the court thereafter conducts a " 'court trial' " on prior conviction allegations. (See, e.g., *People v. Mosby* (2004) 33 Cal.4th 353, 356 & fn. 1, 365.) Because the statutory text is not reasonably susceptible to Bibi's interpretation, we reject it. (*Dignity Health*, *supra*, 44 Cal.App.5th at p. 154 [holding that a statutory term " 'must be given a reasonable and commonsense interpretation' "].)[8]

Notwithstanding the express language of the statute, Bibi argues that if we do not accept her interpretation of subdivision (b)(2) of section 1170, we would be "open[ing] the door" for the trial court to make findings that conflict with the jury's findings. (Boldface omitted.) In support of this contention, Bibi argues that permitting a court to render a finding on an aggravating factor that is inconsistent with a jury's verdict would violate a defendant's Sixth Amendment right to a jury trial. She

---

[8] Because we conclude the statutory text is not reasonably susceptible to Bibi's interpretation, we do not address the Attorney General's argument that the provision's legislative history forecloses Bibi's argument. (See *People v. Watie* (2002) 100 Cal.App.4th 866, 884 [" 'When the words [of a statute] are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history.' "].)

17

also claims the trial court in this case may have violated her Sixth Amendment right because there is an "inherent conflict" between the court's finding that the burglary involved a "threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness" under rule 4.421(a)(1) and the jury's acquittal of Bibi on count 1 for forcible lewd act on a child.  (Rule 4.421(a)(1).)  She thus invokes "the doctrine of constitutional avoidance, which provides that 'a statute should not be construed to violate the Constitution " ' "if any other possible construction remains available." ' " ' [Citation.]" (*Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 75 (*Chavez Zepeda*).)

Assuming arguendo that a court would violate a defendant's Sixth Amendment right to a jury trial if it made an aggravating factor finding that contradicted a jury's verdict, and that Bibi's extratextual construction of the statute " ' ' " 'remains available" ' " ' " for the purposes of the doctrine of constitutional avoidance (see *Chavez Zepeda, supra*, 97 Cal.App.5th at p. 75), the doctrine does not support Bibi's interpretation.[9]

First, as to the alleged inconsistency between the trial court's finding of the aggravating factor identified in rule 4.421(a)(1) and the jury's acquittal of Bibi on the lewd act charge, Bibi acknowledges, "Due to the sanctity of the jury deliberations, it cannot be known why the jury acquitted [Bibi]." She postulates, "The jury might have found that [Bibi] was incapable of sexual gratification when the victim is female" or

---

[9]  We observe that Bibi does not cite any authority to support her claim the Sixth Amendment bars a trial court from rendering an aggravating factor finding that is inconsistent with a jury's verdict.

"the jury could have found the young [victim's] description of the attack not credible and so convicted [Bibi] based only on those acts confirmed by video or corroborated by law enforcement." Bibi also posits that if the jury acquitted Bibi on the ground that M.M. had "fabricated the physical attack," then "it is difficult to see how this burglary . . . can be considered particularly vicious" to warrant a true finding under rule 4.421(a)(1). She further argues that by finding that Bibi did in fact "physical[ly] attack" M.M., the court made a ruling contrary to a finding the jury may have rendered, that is, that M.M. falsely claimed Bibi attacked her.

First, Bibi's reasoning to support her claim of Sixth Amendment error is speculative. She relies upon a finding the jury "could have," but did not necessarily, make in acquitting her. She also acknowledges "the defense had argued" at trial that Bibi "was incapable of sexual gratification when the victim is female . . . ." Indeed, at the court trial, Bibi's counsel below represented (1) "the *only* argument that was made by counsel from the defense [as to the section 288 lewd act charge] was sexual intent," and (2) the defense "submitted as to all the other facts" relevant to that offense. (Italics added.) Further, in determining whether the prosecution proved the aggravating circumstance in rule 4.421(a)(1), the court stated it was "not considering" the section 288 charge for lewd act upon a child because Bibi "was acquitted of" that offense. In sum, Bibi has not shown a violation of her Sixth Amendment right to a jury trial.

Second, Bibi suggests unless we adopt her proposed construction of section 1170, subdivision (b)(2), the statute will "invite" trial courts to make findings that contradict the jury's findings. The text of section 1170, subdivision (b)(2) does not

19

purport to authorize a trial court to make a finding on an aggravating factor that contradicts a jury's verdict. (See § 1170, subd. (b)(2).) It simply allows the court to determine aggravating factors at a court trial. (See *ibid*.) Therefore, we are not persuaded that "constitutional violations" will result from our rejection of Bibi's interpretation of the statute.

In sum, we reject Bibi's contention that section 1170, subdivision (b)(2) barred the trial court from holding a court trial on the aggravating factors because her interpretation is (1) unsupported by the statutory text, and (2) not compelled by the doctrine of constitutional avoidance.

### 3. *Bibi forfeited arguments she first raised in her reply brief*

In Discussion, part B.2, *ante*, we rejected an argument Bibi raised in her opening brief, to wit, under the proper interpretation of section 1170, subdivision (b)(2), "the trial court [may] determine the truth of aggravating factors only when the defendant's guilt has been determined at a court trial." In her reply brief, Bibi argues for the first time that her "waiver of the right to have a jury decide 'the aggravating circumstance[s]' . . . d[id] not include a waiver of [her] right" to "have the underlying factual allegations decided by a jury . . . ." Put differently, Bibi asks us to "distinguish[ ] between the 'facts' upon which an aggravating factor allegation rests," which she claims should have been decided by the jury, "and the trial court's discretionary sentencing choices based on properly found facts."[10]

---

[10] Recall that section 1170, subdivision (b)(2) permits a trial court to "impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that

20

By withholding this contention from her opening brief, Bibi deprived the Attorney General of an opportunity to respond to it.[11] We thus do not address Bibi's belated argument and express no opinion on it. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 642–643 (*Taylor*) [concluding that a defendant had forfeited a contention by raising it for the first time in a reply brief].)[12]

---

justify" that sentencing decision "and *the facts underlying those circumstances* have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (See § 1170, subd. (b)(2), italics added.)

[11] In her reply, Bibi cites page 18 of the respondent's brief for the proposition the Attorney General "argues that the final phrase of section 1170, subdivision (b)[(2)], means that a defendant who waives a jury trial on the aggravating circumstance[s] necessarily also waives the right to have the underlying factual allegations decided by a jury, even at a jury trial." That argument is absent from page 18 of the respondent's brief. Although the Attorney General argues elsewhere that Bibi "waived her right to a jury trial and agreed to have the court adjudicate the aggravating circumstances at a bench hearing," the Attorney General did not anticipate Bibi would distinguish between aggravating circumstances and the facts underlying those circumstances.

[12] We note our high court recently declined to resolve whether section 1170, subdivision (b)(2) draws a distinction between the "circumstances in aggravation" upon which a trial court may rely in imposing the upper term and "the facts underlying those circumstances" that must be found true beyond a reasonable doubt. (See fn. 10, *ante* [noting that these two potentially disparate terms appear in the statutory text]; *People v. Lynch* (2024) 16 Cal.5th 730, 770 [observing that "[t]he text of [the statute] itself 'arguably allows for [this] distinction to be

Bibi also claims for the first time in her reply that her interpretation of section 1170, subdivision (b)(2) is the only one that is "consistent with the other provisions of section 1170[ and] promotes the legislative goal[ ] of equality in sentencing . . . ." Bibi has forfeited these belated arguments as well. (*Taylor*, *supra*, 119 Cal.App.4th at pp. 642–643.)

**C.     The Trial Court Did Not Err By Failing To Consider Whether Bibi Was Entitled to Section 1170, Subdivision (b)(6)'s Lower Term Presumption Because She Has Not Demonstrated She Made an Initial Showing Below That the Sexual Violence She Claims To Have Experienced Was a Contributing Factor in the Commission of the Burglary**

As relevant here, "section 1170, subdivision (b)(6) creates a presumption that the court should impose the low term 'if any of the following was a contributing factor in the commission of the offense:  [¶]  (A)  The [defendant] has experienced psychological, physical, or childhood trauma, including, but not limited to,

---

drawn," but electing not to "tak[e] a position on the issue"].)  We further note that Bibi filed her opening brief five months after the Supreme Court issued its decision in *Lynch* and thus could have raised in her opening brief the issue our high court identified.  (See *Lynch*, at p. 730 [issued on Aug. 1, 2024].)  The potential ambiguity identified in *Lynch* pertains only to the newly minted argument Bibi raises in her reply, and not to her assertion the statutory term "court trial" refers only to a proceeding in which the trial court was the factfinder as to the underlying charges and the aggravating factors.  (See Discussion, part B.2, *ante* [describing this argument that Bibi raised in her opening brief].)

abuse, neglect, exploitation, or sexual violence. . . .' " (*Knowles*, *supra*, 105 Cal.App.5th at p. 765, quoting § 1170, subds. (b)(6) & (b)(6)(A).)  "This presumption may be overcome if the court 'finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice.'  [Citation.]" (*Knowles*, at p. 765, quoting § 1170, subd. (b)(6).)

Bibi contends, "The trial court failed to credit [Bibi's] history of sexual trauma as a mitigating factor, [which] requir[ed] a lower term sentence pursuant to newly added section 1170, subdivision (b)(6)." (Boldface omitted.)  Specifically, Bibi argues her counsel presented to the trial court a psychiatric report and Bibi's asylum application, both of which Bibi claims show she had suffered "severe psychological trauma and sexual violence." (Boldface omitted.)  Bibi argues on appeal this evidence establishes she "was born a male in Uganda, a country where homosexuality is widely condemned as evil"; in April 2012, "a mob violently attacked her and her partner Moses, suspecting them to be in a homosexual relationship," and, thereafter, her father "disowned her[, h]er village elders formally expelled her from her village[, and s]he received telephone threats from strangers and friends alike"; in March 2013, Ugandan police dragged Bibi from her home, beat her, and placed her in a cell where inmates tortured and raped her repeatedly; and Bibi "continues to suffer both physical and psychological effects resulting from this trauma."  According to Bibi, this evidence triggered the lower term presumption under section 1170, subdivision (b)(6)(A), and "the record does not reflect that the trial court considered the lower term presumpt[ion] nor that it

23

conducted a weighing of mitigating and aggravating factors" required to overcome that presumption.

"[I]n reviewing a trial court's failure to expressly apply" the "lower term presumption" provided in section 1170, subdivision (b)(6), an appellate court determines whether the presumption "has been 'trigger[ed]' by an 'initial showing' of the applicability of the statute." (See *Fredrickson*, *supra*, 90 Cal.App.5th at pp. 991, 994.) "[A]n initial showing has been made when the record and/or arguments are sufficient to put a trial court on notice that [a mitigating circumstance identified in section 1170, subdivision (b)(6)] *may have been a contributing factor in commission of the underlying offense.*" (See *Fredrickson*, at p. 994, italics added.) Absent "such an initial showing, . . . there is no basis for [an appellate] court to conclude the trial court's failure to expressly consider the lower term presumption" constitutes an abuse of discretion. (See *id.* at pp. 987–988, 994.)[13] Indeed, our Division has previously recognized, "As made

_____

[13] Although the defendant in *Fredrickson* invoked section 1170, subdivision (b)(6)(B)'s lower term presumption for crimes in which the perpetrator's " 'youth was "a contributing factor" ' " (see *Fredrickson*, *supra*, 90 Cal.App.5th at pp. 986–987), the Court of Appeal indicated the "initial showing" requirement applies to all three mitigating circumstances in subdivision (b)(6). (See *Fredrickson*, at p. 994, fn. 8 [stating that § 1170, subd. (b)(6)'s lower term presumption applies only if an "initial showing" of the circumstances specified in the statute has been made]; *Fredrickson*, at p. 993, fn. 7 [finding the presence of a mitigating circumstance identified in subd. (b)(6) does not trigger the presumption unless it was "a contributing factor" vis-à-vis the crime because "the Legislature opted to require a finding of causation as to *all* of the circumstances in" the provision, italics added].)

plain by the statutory text, the mere fact a defendant . . . has suffered past trauma is insufficient—[it] . . . must be 'a contributing factor in the commission of the offense' for the low term presumption to apply." (See *Knowles*, *supra*, 105 Cal.App.5th at p. 765, quoting § 1170, subd. (b)(6).)

At no point in Bibi's briefing does she direct us to any evidence or argument that placed the trial court on notice the sexual violence Bibi claimed to have experienced "may have been a contributing factor in commission of the underlying offense," here, the burglary. (See *Fredrickson*, *supra*, 90 Cal.App.5th at p. 994.) Rather, Bibi asserts, without any supporting analysis or record citation, that the "[d]efense presented evidence that established a proper nexus between [Bibi's] traumatic past and the current offense." Furthermore, Bibi acknowledges her counsel did not file a sentencing memorandum invoking the lower term presumption, and the reporter's transcript reveals that neither the parties nor the trial court discussed the presumption at the sentencing hearing. Instead, the trial court appears to have found the hardships Bibi faced in her country of origin supported its decision to strike the five-year enhancement authorized by section 667, subdivision (a)(1). Accordingly, Bibi does not show the court abused its discretion in failing to consider whether section 1170, subdivision (b)(6)'s lower term presumption applied to Bibi's sentencing. (See *Knowles*, *supra*, 105 Cal.App.5th at p. 765 [stating "[t]he burden is on the party challenging the sentencing decision to show that the court abused its discretion"]; *Flint*, *supra*, 22 Cal.App.5th at p. 1006, fn. 17 [noting that a reviewing court " ' "will not develop the appellants' arguments for them" ' "].)

25

## DISPOSITION

We affirm the judgment.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.